**Affirmed as modified; Opinion Filed August 31, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00848-CR

**ISSAAC MATTHEW JIMENEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6
Dallas County, Texas
Trial Court Cause No. F17-75313-X**

## MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Pedersen, III
Opinion by Justice Myers

A jury convicted appellant Issaac Matthew Jimenez of aggravated sexual assault of a child and assessed punishment at sixty years in prison and a $7,700 fine. Appellant's counsel originally filed an *Anders* brief. We struck the brief and ordered her to file a brief that addressed any arguable issues found within the record; or, if a thorough and professional review of the record identified no such issues, file an *Anders* brief complying with the requirements of *High v. State*, 573 S.W.2d 807, 812–13 (Tex. Crim. App. [Panel Op.] 1978). Appellant's counsel responded by filing a brief on the merits that raised two issues: (1) The trial court abused its discretion in admitting evidence of family violence between appellant and the

complainant's mother, in violation of rule 404(B); and (2) the trial court abused its discretion in admitting the extraneous offense evidence because its prejudicial effect substantially outweighed the probative value. The State brings a cross-point arguing we should modify the judgment. As modified, we affirm the judgment of conviction.

## BACKGROUND AND PROCEDURAL HISTORY

Appellant was originally indicted for continuous sexual abuse of a child. The indictment alleged:

> That ISSAAC MATTHEW JIMENEZ, hereinafter called Defendant, on or about the 1st day of August, 2008 in the County of Dallas, State of Texas, did then and there intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [the complainant], a child younger than 14 years of age, hereinafter called complainant, namely by THE PENETRATION OF THE COMPLAINANT'S FEMALE SEXUAL ORGAN BY THE DEFENDANT'S FINGER and by THE CONTACT BETWEEN THE HAND OF THE COMPLAINANT AND THE GENITALS OF THE DEFENDANT WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF THE DEFENDANT[.]

The evidence at trial showed that appellant was the boyfriend of the complainant's mother. The complainant's mother testified that she met appellant around May of 2007.

In addition to a sister, the complainant also had a younger half-brother. This was appellant's biological son; the complainant and her sister were from a previous relationship by their mother.

The complainant, seventeen years old on the day she testified, told the jury that appellant first entered her life in 2007, when she was around seven years of age.

The complainant testified that she, her sister, her mother, and appellant all slept together in the same room, in the same bed, and that while they were sleeping appellant would press his body against hers and touch her inappropriately. She explained that he would touch her vagina with his hands, both over and under her clothing, that he penetrated her vagina, and that this was painful. Later, after the complainant, her sister, and their mother moved out and got a place of their own (they probably moved out around 2011, according to the complainant's mother), appellant continued to visit their apartment, sometimes spending the night. The complainant testified that, during this time, appellant would enter the room she shared with her sister, get in bed with her (she and her sister slept in twin beds), press his body against hers (sometimes laying down next to her; at other times getting on top of her), and touch her vagina with his hands, just as he had before. The complainant testified that she was younger than thirteen years of age when this occurred. The complainant's sister testified she saw appellant sometimes enter the room she shared with her sister and get into bed with her sister. The complainant's sister would turn away when this occurred because she was afraid.

The outcry occurred after the complainant's sister told a school counselor about the abuse. This occurred around February of 2017, according to the complainant's mother. The school called the mother, who later spoke to the complainant, and the school also notified police.

The complainant testified that she feared appellant because "he would beat

–3–

my mom in front of me." She remembered him slapping and punching her mother, pushing her to the ground, and kicking her. The complainant testified that she was worried about what might happen if she reported the abuse.

There was a delayed outcry in this case. Detective Phillip Lawler of the Dallas Police Department, the lead investigator on the case, testified that at least several years passed between the offense and the complainant's eventual outcry. By the time the outcry occurred, appellant and the complainant's mother had ended their relationship. Appellant and the complainant's mother, according to the mother's testimony, had not seen each other for over six months, and they had stopped dating perhaps four or five years before that.

The complainant's mother was certain that during the time she and appellant were dating, either when they lived together in a house or when she and the children moved out and were living on their own, the complainant was always under the age of fourteen. The complainant's mother also testified that towards the end of 2008, her relationship with appellant began to deteriorate. She said there was a "domestic violence issue" and that appellant "was arrested." She testified that there was a lot of fighting, the children saw the fighting, and it upset them. She agreed it was a scary time.

The trial included testimony from Michelle Rodgers, the Dallas Children's Advocacy Center therapist who treated the complainant and her sister, and Debra Hardaway, a Child Protective Services (CPS) investigator. Hardaway testified that

she performed a risk assessment of the complainant's family in 2012, approximately five years before the outcry, after the complainant's sister reported feeling uncomfortable when appellant hugged and kissed her. Hardaway interviewed both children but neither of them made an outcry of abuse at that time. Rodgers testified that domestic violence might be one reason why a child would not report abuse immediately because it "could be a form of threat to them whether verbally said or implied to a child." She testified that "[s]eeing your parent being abused by someone could set that threat up, if I say something something [sic] could happen to her or me or my sibling."

The jury ultimately convicted appellant of the lesser-included offense of aggravated sexual assault of a child.[1] Following the presentation of punishment-related evidence, the jury assessed punishment at sixty years in prison and a $7,700 fine.

## DISCUSSION

### 1. Rule 404(b)

In his first issue, appellant argues the trial court erred in admitting evidence of family violence between appellant and the complainant's family under rule 404(b).

Shortly before the start of trial, the State filed a notice of extraneous offenses

---

[1] The jury was instructed on the lesser-included offenses of aggravated sexual assault of a child and indecency with a child.

pursuant to rule 404(b) specifying that during the State's case in chief or at punishment, certain extraneous crimes, wrongs, or acts might be introduced. Among other things, the notice stated:

> On or about August 2008, in Dallas County, Texas, this defendant would physically assault [the complainant's mother] by using his hands and fists to hit [the complainant's mother] on her body causing bodily injuries. He would also pull her hair, throw her on the floor and kick her with his foot. This was a continuing course of conduct that the children witnessed.

The trial court held a hearing prior to trial and admitted extraneous offense evidence regarding domestic violence by the defendant against the complainant's mother.

Defense counsel objected to the domestic violence evidence as follows:

> I would object to that for the relevance when you look at the time of it, Your Honor, that I believe that the relationship between the children's mother and my client ended around 2012. On or about 2012.
>
> They don't make this outcry until 2017. So Mr. Jimenez isn't even in the picture 5 years before the outcry. For them to say that it was because of this domestic violence is why we waited, it seems really tenuous when you have the 5[-]year gap when he's not even in the picture any more. Completely out of the picture. They're with their mother. He's wherever he is. Not with her. Not seeing them. Not staying there. Nothing. It's a complete wall between everybody. They're not his kids. It's not that he has visitation of them or anything like that. They're not his children, the 2 girls.
>
> I would argue it's irrelevant because of mainly because of the time gap.
>
> Also[,] I believe it's when you focus on the time gap the probative value is outweighed by the extreme prejudicial effect. They're talking about stuff from '08 and now we're talking 2007 when they come forward I think that makes it very prejudicial at that point.

The court ultimately overruled defense counsel's relevance and rule 403 objections, and counsel obtained a running objection.

To preserve error for appeal, a party must make a timely objection that states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). An argument on appeal must comport with the objection made at trial. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

Appellant's rule 404(b) complaint was not preserved because he not did object on that basis in the trial court. He objected based on relevancy and rule 403, but a relevancy objection "does not preserve error concerning a Rule 404 extraneous offense claim." *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999); *see also Bunton v. State*, 136 S.W.3d 355, 370 (Tex. App.—Austin 2004, pet. ref'd) ("The Texas Court of Criminal Appeals has now made it clear that a general relevancy objection at trial does not preserve error concerning inadmissible extraneous offenses.") (citing *Medina*, 7 S.W.3d at 643). Similarly, an objection made under rule 403 does not preserve a complaint under rule 404(b). *See, e.g., Parmer v. State*, 38 S.W.3d 661, 668 (Tex. App.—Austin 2000, pet. ref'd) (issue regarding admission of evidence under rule 404(b) not preserved because no 404(b) objection was made, but court addressed issue concerning same evidence under rule 403); *Ross v. State*, No. 06-18-00174-CR, 2019 WL 2292335, at *3 (Tex. App.—Texarkana May 30, 2019, pet. ref'd) (mem. op., not designated for publication) (appellant failed to preserve rule 404(b) argument for appeal where he only raised a rule 403 argument at trial); *Peinado v. State*, No. 05-14-00418-CR, 2015 WL

4931492, at *15 (Tex. App.—Dallas Aug. 18, 2015, no pet.) (mem. op., not designated for publication) ("We conclude [appellant] did not specifically make a rule 404(b) objection separate from her 403 objection, and therefore, has not preserved a rule 404(b) complaint on appeal."); *see also Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex. Crim. App. 1990) (objecting party did not make separate rule 403 objection from his 404(b) objection, and therefore, had not preserved a rule 403 complaint on appeal). We conclude appellant has not preserved a complaint that admission of the extraneous offense evidence violated rule 404(b), and we overrule appellant's first issue.

## 2. Rule 403

In his second issue, appellant argues the trial court erred in admitting the extraneous offense evidence because its prejudicial effect substantially outweighed its probative value.

We review trial court decisions admitting or excluding evidence for an abuse of discretion, and under this standard the trial court's decision admitting or excluding evidence will be upheld so long as it is within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

Rule 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. TEX. R. EVID. 401. "Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); TEX. R. EVID. 402. When determining whether

–8–

evidence is relevant, it is important for courts to examine the purpose for which the evidence is being introduced. *Layton*, 280 S.W.3d at 240. "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.*

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Id.*

Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). All evidence against a defendant is, by its nature, designed to be prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 does not exclude all prejudicial evidence; instead, it focuses on the danger of "unfair" prejudice. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Evidence is unfairly prejudicial if it has the capacity to lure the factfinder into declaring guilt on a ground other than proof specific to the offense charged. *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). The trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex.

–9–

Crim. App. 2006).

A rule 403 balancing test includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). A rule 403 analysis may also consider whether there is any tendency of the evidence to confuse or distract the jury from the main issues as well as any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). As the court acknowledged, however, "these factors may well blend together in practice." *Id*. at 641-42.

Applying these factors, there was a delayed outcry in this case, and the complainant testified that she did not report the abuse earlier because she feared appellant—having seen him slap, punch, kick her mother, and push her to the ground. As the State argued at the pretrial hearing, the abuse evidence explained why the complainant and her sister did not come forward about the sexual abuse until nearly ten years after the first assault incident. The abuse evidence was important to the State's case, which hinged on the credibility of the complainant and her sister. The trial court, therefore, could have concluded the probative value of the disputed evidence and the State's need for it both weighed in favor of admission. As for the potential to impress the jury in some irrational yet indelible way, the evidence

–10–

of domestic violence, while egregious, paled in comparison to the detailed account of sexual abuse provided by the complainant. *See Jones v. State*, 119 S.W.3d 412, 422–23 (Tex. App.—Fort Worth 2003, no pet.) (prejudicial effect did not substantially outweigh probative value of extraneous acts when all the extraneous acts involving the victim were less heinous than the evidence relating to the charged offense); *Muzolf v. State*, No. 05-15-00892-CR, 2016 WL 2842066, at \*8 (Tex. App.—Dallas May 10, 2016, no pet.) (mem. op., not designated for publication) (citing *Jones*). Appellant does not direct our attention to any particular facts about the disputed evidence that show it to be uniquely or unfairly prejudicial. Likewise, there was a low probability of confusion or distraction of the jury from main issues in the case. The main issue at trial was whether appellant sexually abused the complainant as alleged in the indictment, and the domestic violence evidence was offered to explain the delayed outcry. There is no indication in the record of how evidence of domestic violence would confuse that issue. In addition, the evidence was not time consuming and the State did not spend an inordinate amount of time developing it. Thus, the trial court did not abuse its discretion in overruling appellant's rule 403 objection, and we overrule appellant's second issue.

### 3. State's Cross-Point

In the State's cross-issue, it requests the judgment be modified to include a special finding that the victim was younger than fourteen at the time of the offense. The Texas Code of Criminal Procedure requires an affirmative finding that the

victim of a sexually violent offense was younger than fourteen years of age. *See* TEX. CODE CRIM. PROC. ANN. art. 42.015(b).[2] A "sexually violent offense" includes aggravated sexual assault. *See id.* art. 62.001(6)(A). An affirmative finding that the victim was younger than 14 years old triggers the prohibited-employment provisions of the sex-offender-registration program. *Id.* art. 62.063(b).

The judgment states that the age of the complainant at the time of the offense was "6 years," but the indictment alleges the offense occurred on or about August 1, 2008, when the complainant was seven years and nine months old. Moreover, the testimony shows that appellant first entered the complainant's life when she was around seven years of age.

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we modify the judgment to reflect a finding that the victim "was younger than 14 years of age at the time of the offense." *See* TEX. CODE CRIM. PROC. ANN. art. 42.015(b); *Timmons v. State*, No. 05-19-00126-CR, 2020 WL 2110708, at *6 (Tex. App.—Dallas May 4, 2020, no pet.) (mem. op., not designated for publication); *Decker v. State*, No. 05-18-01259-CR, 2020 WL 614100, at *5 (Tex. App.—Dallas Feb. 10, 2020, no pet.) (mem. op., not designated

---

[2] Article 42.015(b) of the Texas Code of Criminal Procedure provides: "In the trial of a sexually violent offense, as defined by Article 62.001, the judge shall make an affirmative finding of fact and enter the affirmative finding in the judgment in the case in the judge determines that the victim or intended victim was younger than 14 years of age at the time of the offense." *Id.*

for publication); *Alexander v. State*, No. 05-18-00784-CR, 2019 WL 3334625, at \*6 (Tex. App.—Dallas July 25, 2019, no pet.) (mem. op., not designated for publication).

As modified, we affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180848F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ISSAAC MATTHEW JIMENEZ,
Appellant

No. 05-18-00848-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 6, Dallas County, Texas
Trial Court Cause No. F17-75313-X.
Opinion delivered by Justice Myers.
Justices Whitehill and Pedersen, III
participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**MODIFIED** as follows:

To reflect an affirmative finding that the victim was younger than 14
years of age at the time of the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of August, 2020.